Argued September 20, affirmed October 30, 1978

OLDS, *Petitioner,*
*v.*
SUPERIOR FAST FREIGHT, *Respondent.*
(WCB No. 77-945, CA 10628)
585 P2d 709

Susan Elizabeth Reese, Portland, argued the cause for petitioner. With her on the brief were Knappenberger & Tish and Allan F. Knappenberger, Portland.

Scott M. Kelley, Portland, argued the cause for respondent. With him on the brief were Donald O. Costello and Cheney & Kelley, Portland.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Claimant appeals from an order of the Workers' Compensation Board (Board) allowing him no disability compensation for his legs. The facts are not in dispute. Claimant was injured in an industrial accident on April 24, 1973. His primary complaint was weakness in his lower back, with pain radiating into his legs. After two determination orders and two stipulated orders of settlement, claimant had received a total of 139 degrees for 43.4 percent unscheduled disability to his back. At claimant's request a hearing was held on the issue of additional permanent partial disability compensation for claimant's legs. The referee found:

> "* * * Dr. Chuinard states that claimant has no disability or objective findings in his legs, but that any leg symptoms which he experiences are a part of his back symptoms. Under such circumstances an award for leg disability is not justified."

The Board affirmed the referee's order.

The issue here is, as below, whether claimant is entitled to a separate award for partial loss of his leg functions. Dr. Chuinard's diagnosis is central to the determination, and his opinion in part indicates:

> "(3) The patient's leg symptoms are part of his back symptoms. He has no disability or objective findings in the legs per se. The aching, tenderness, and stiffness in the lower extremities is a part of the stiffness incident to the degenerative arthritis and the injury to his lumbar spine. More specifically, there is no disability in the legs per se."

The doctor's opinion, giving rise to considerable argument and dictionary references over the definition of "per se" is easily given perspective by an earlier diagnosis from the same doctor:

> "3. In my opinion, Mr. Olds does have a permanent partial disability as a result of the industrial accident of April 24, 1973. The leg symptoms are due to referred pain from the low back and protective tightening of these muscles because of the back symptoms."

[ 675 ]

■ It is apparent to us that claimant is suffering from "referred" pain to the legs, although the pain does not arise out of an injury to the legs per se. Accordingly, the referee, and consequently the Board, erred in failing to allocate a separate award for loss of function to the scheduled members. *Foster v. S.A.I.F.,* 259 Or 86, 485 P2d 407 (1971); *Rundell v. SAIF,* 12 Or App 258, 262, 506 P2d 532 (1973).

■ A separate award for loss of function does not necessarily indicate an *increase* in compensation, however. Differentiating between loss of function for scheduled members and loss of earning capacity for unscheduled disability is an analytical tool unrelated to the *amount* of compensation ultimately awarded. As the court noted in *Foster:*

> "Claimants, generally, seem to be imbued with the idea that if they get both a scheduled and an unscheduled award they are, in some way, going to secure greater compensation. This is not so, because if one award for unscheduled disability were given for both the shoulder and the arm, the disability to both would have to be included. * * *." 259 Or at 91.

■■ It is apparent to us that the referee, and the Board on review, gave substantial consideration to the disabilities of claimant as a whole. Although they erred analytically in failing to separate out the loss of function to the legs, that loss of function was obviously included in the award for unscheduled disability to claimant's back.[1] The losses of function to which

---

[1] Although it is true that unscheduled injuries are to be compensated according to claimant's potential loss of income while scheduled injuries are compensated according to loss of function, *Surratt v. Gunderson Bros.,* 259 Or 65, 485 P2d 410 (1971), loss of function cannot be easily divorced from loss of function in a work-related setting. Claimant here has come very close to failing to prove his case of loss of function of his legs as his job hunting has been minimal. The referee found: "* * * Claimant testified that he made inquiry of several grocery managers about employment over six months ago and was told that they would not hire a person with a bad back. Otherwise he has not looked for work." The claimant in *Surratt v. Gunderson Bros., supra* at 80, "failed to cooperate in any attempt to determine what he can do; therefore, we are unable to tell whether the claimed pain in his thighs is sufficient to interfere materially with the use of his legs *while he is engaged in a normal, gainful occupation.*" (Emphasis supplied.)

claimant adverts are problems which are easily associated with back problems: difficulty lifting, walking, getting up in the morning, sitting and housework.[2] It is apparent that these same functional difficulties were considered in claimant's unscheduled award. We see no reason why claimant should be twice compensated for the same functional difficulties.

Accordingly, the order is affirmed as reflecting a 10 percent loss of function to each leg, for a total of 30 degrees for the loss of use of the legs.[3] Additionally, claimant is entitled to 109 degrees for unscheduled disability to his back, or 34 percent disability. The total remains 139 degrees.

Affirmed.

---

[2] It is not surprising that claimant's difficulties are integrally related to his back problems; they originate there.

[3] ORS 656.214(2)(c) provides for allowance of 150 degrees for complete loss of one leg.